# EXHIBIT 1

ER

## COMMONWEALTH OF MASSACHUSETTS

| | | |
|---|---|---|
| SUFFOLK, ss. | ) | SUPERIOR COURT |
| | ) | C.A. NO. |
| | ) | |
| GINA M. FERRINI, | ) | |
| as the Personal Representative | ) | |
| of the Estate of PETER F. MONSINI, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALLIED WORLD ASSURANCE COMPANY | ) | |
| (U.S.), INC., | ) | |
| ARCH INSURANCE COMPANY, | ) | |
| ENDURANCE AMERICAN SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| NAUTILUS INSURANCE COMPANY, | ) | |
| NAVIGATORS SPECIALTY INSURANCE | ) | |
| COMPANY, | ) | |
| STARR SURPLUS LINES INSURANCE | ) | |
| COMPANY, | ) | |
| UNDERWRITERS AT LLOYD'S, LONDON, and | ) | |
| XL SPECIALTY INSURANCE COMPANY, | ) | |
| Defendants | ) | |

## COMPLAINT AND JURY CLAIM

1. The plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, is an individual residing at 18 Caroline Road, Easton, Bristol County, Massachusetts.

2. The defendant, Allied World Assurance Company (U.S.), Inc. (Allied), is a for-profit foreign corporation with places of business located at 260 Franklin Street, Suite 930, Boston, Suffolk County, Massachusetts and 199 Water Street, 24th Floor, New York, New York.

3. The defendant, Arch Insurance Company (Arch), is a for-profit foreign corporation with places of business located at 99 High Street, 8th Floor, Boston, Suffolk County, Massachusetts and 210 Hudson Street, Suite 300, Harborside 3, Jersey City, New Jersey.

4. The defendant, Endurance American Specialty Insurance Company d/b/a Sompo International Companies (Endurance), is a for-profit foreign corporation with places of business located at One Boston Place, 201 Washington Street, Suite 3610, Boston,

1

Suffolk County, Massachusetts and 1221 Avenue of the Americas, New York, New York.

5. The defendant, Nautilus Insurance Company (Nautilus), is a for-profit foreign corporation with places of business located at 7233 East Butherus Drive, Scottsdale, Arizona and 101 Hudson Street, 25th Floor, Suite 2550, Jersey City, New Jersey.

6. The defendant, Navigators Specialty Insurance Company d/b/a The Hartford (Navigators), is a for-profit foreign corporation with places of business located at 100 High Street, Suite 1025, Boston, Suffolk County, Massachusetts and 83 Wooster Heights, Danbury, Connecticut.

7. The defendant, Starr Surplus Lines Insurance Company (Starr), is a for-profit foreign corporation with places of business located at One International Place, 11th Floor, Boston, Suffolk County, Massachusetts and 399 Park Avenue, 2nd Floor, New York, New York.

8. The defendant, Underwriters at Lloyd's, London d/b/a Ambridge Partners, LLC (Lloyd's), is a for-profit foreign corporation with places of business located at 280 Park Avenue, East Tower, 25th Floor, New York, New York and 119 North Park Avenue, 4th Floor, Rockville Centre, New York and the registered agent, Corporation Service Company, located at 84 State Street, Boston, Suffolk County, Massachusetts.

9. The defendant, XL Specialty Insurance Company d/b/a AXA XL (XL), is a for-profit foreign corporation with places of business located at 75 State Street, Boston, Suffolk County, Massachusetts and One World Financial Center, 225 Liberty Street, 40th Floor, New York, New York.

**FACTS**

10. The plaintiff incorporates herein the preceding paragraphs of this Complaint as if fully set forth herein.

11. On March 26, 2022, Peter F. Monsini was an employee of JDC Demolition Company, Inc. (JDC) and was assigned to perform demolition work that involved operating a Kobelco mini excavator on the 8th floor of the Government Center Garage located at One Congress Street, Boston, Suffolk County, Massachusetts (the Garage) to hammer in place a standalone 9th floor T-beam. While Mr. Monsini was doing so, the T-beam rolled over and fell, causing a partial collapse of the Garage, including the 8th floor where he was located. The T-beam had an eccentric center of gravity due to uneven loading and its north end connection was later found to be deficient due to having a flat plate in lieu of an angle clip. As a result of the partial collapse of the Garage, Mr. Monsini fell into the rubble and died.

12. At all relevant times, John Moriarty & Associates, Inc. (Moriarty) was the general contractor on the subject construction site and had a contract with JDC obligating JDC to perform a partial demolition of the Garage.

13. At all relevant times, JDC had a contract with GZA GeoEnvironmental, Inc. (GZA) obligating GZA to perform a pre-demolition survey, develop an engineering plan for the demolition of the Garage, and perform regular field visits to ascertain the stability of the Garage.

14. At all relevant times, Bulfinch Unit A Owner, LLC (Bulfinch) and The HYM Investment Group, LLC (HYM) owned and controlled the subject construction site, acted as developers overseeing the subject project, and had a contract with Moriarty obligating Moriarty to perform the demolition of the Garage in conformance with contract documents, including GZA's demolition plan, and to oversee the work performed by subcontractors "of every tier," including JDC and GZA.

15. On June 17, 2022, GZA issued a report of its post-collapse structural evaluation of the Garage which uncovered 604 "structurally relevant deficiencies," including numerous deficient T-beam connections which were in the same deficient condition but remained undetected prior to the collapse.

16. On June 22, 2022, the plaintiff mailed to Moriarty and HYM her notices of claim pertaining to Mr. Monsini's wrongful death. The notices of claim included requests to disclose the applicable insurance coverage.

17. On July 21, 2022, the plaintiff, Gina M. Ferrini, as the Personal Representative of the Estate of Peter F. Monsini, brought a wrongful death lawsuit against Moriarty and HYM, C.A. No. 2284CV01656C, at the Suffolk Superior Court. The wrongful death lawsuit arose from the fatal construction site incident of March 26, 2022 where Mr. Monsini fell to his death during the collapse of the Garage.

18. On August 22, 2022, the plaintiff amended her complaint in the wrongful death lawsuit, adding GZA and Bulfinch as defendants.

19. On September 23, 2022, the Occupational Safety and Health Administration (OSHA) issued citations to Moriarty and JDC based on the OSHA investigation of the collapse. The OSHA found, *inter alia*, that Moriarty and JDC committed the following violations:

    (a) Moriarty violated 29 C.F.R. § 1926.20(b)(2) by failing to initiate and maintain programs providing for frequent and regular inspections of the subject construction site by a competent person;

    (b) Moriarty violated 29 C.F.R. § 1926.21(b)(2) by failing to instruct each employee regarding the recognition and avoidance of unsafe conditions and regarding the applicable regulations concerning hazards or other exposure to injury on the subject construction site;

3

(c) Moriarty violated 29 C.F.R. § 1926.856(a) by failing to ensure that the 7th through 9th floors/working surfaces of the Garage were of sufficient strength to support the imposed load of mechanical equipment;

(d) JDC violated 29 C.F.R. § 1926.20(b)(1) by failing to maintain and enforce accident prevention programs developed by JDC;

(e) JDC violated 29 C.F.R. § 1926.21(b)(2) by failing to instruct each employee regarding the recognition and avoidance of unsafe conditions and regarding the applicable regulations concerning hazards or other exposure to injury on the subject construction site;

(f) JDC violated 29 C.F.R. § 1926.856(a) by failing to ensure that the 7th through 9th floors/working surfaces of the Garage were of sufficient strength to support the imposed load of mechanical equipment; and

(g) JDC violated 29 C.F.R. § 1904.29(b)(4) by failing to properly maintain the Log of Work-Related Injuries and Illnesses as mandated by the OSHA.

20. GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022 clearly established Moriarty and GZA's liability. Most glaringly, GZA's post-collapse structural evaluation and the OSHA investigation showed that Moriarty and GZA failed to detect numerous preexisting structural deficiencies prior to the demolition of the Garage and ensure the structural stability of the Garage while its demolition was ongoing prior to the collapse.

21. At all relevant times, the defendant insurer, Allied, provided insurance coverage under Policy No. 0313-1792 to Moriarty relative to the plaintiff's wrongful death claims.

22. At all relevant times, the defendant insurer, Arch, provided insurance coverage under Policy No. 11PKG8931806 to Moriarty relative to the plaintiff's wrongful death claims.

23. At all relevant times, the defendant insurer, Endurance, provided insurance coverage under Policy No. ELD30009744700 to Moriarty relative to the plaintiff's wrongful death claims.

24. At all relevant times, the defendant insurer, Endurance, provided insurance coverage under Policy No. DPL30016418700 to GZA relative to the plaintiff's wrongful death claims.

25. At all relevant times, the defendant insurer, Nautilus, provided insurance coverage under Policy Nos.: GLP2034207-11, FFX2034215-11 to JDC and was contractually obligated to provide insurance coverage to Moriarty under these policies relative to the plaintiff's wrongful death claims.

4

26. At all relevant times, the defendant insurer, Navigators, provided insurance coverage under Policy No. LA21EXCZ06TCZIC to Moriarty relative to the plaintiff's wrongful death claims.

27. At all relevant times, the defendant insurer, Starr, provided insurance coverage under Policy No. 1000587282211 to Moriarty relative to the plaintiff's wrongful death claims.

28. At all relevant times, the defendant insurer, Lloyd's, provided insurance coverage under Policy No. XS1137721 to Moriarty relative to the plaintiff's wrongful death claims.

29. At all relevant times, the defendant insurer, XL, provided insurance coverage under Policy No. US00068515LI21A to Moriarty relative to the plaintiff's wrongful death claims.

30. On October 1, 2024, long after discovery more than clearly established Moriarty and GZA's liability for Mr. Monsini's wrongful death, the plaintiff submitted her settlement demand to the defendant insurers. The settlement demand pointed out the defendant insurers' duty under Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D, § 3 to timely effectuate a reasonable settlement. The settlement demand also pointed out that Moriarty and GZA's liability was more than reasonably clear as evidenced, *inter alia*, by the following:

    (a) GZA's failure to perform a pre-demolition engineering survey mandated by 29 C.F.R. § 1926.850(a);

    (b) GZA's failure to adequately staff the subject project with licensed structural engineers;

    (c) GZA's untenable position that JDC was solely responsible for ascertaining structural conditions in the field and was able to competently develop demolition procedures safer than those included in GZA's demolition plan despite JDC's known lack of any engineering expertise;

    (d) Moriarty's failure to recognize that GZA disclaimed in its contract with JDC any responsibility for ascertaining structural conditions in the field, which essentially amounted to an unlawful contract term purportedly allowing GZA to develop an unsafe demolition plan noncompliant with the most basic principles of engineering practice;

    (e) Moriarty's prioritization of work progress over jobsite safety evidenced by the fact that Moriarty kept JDC and GZA under constant pressure to facilitate work progress and, as a result, GZA's demolition plan was kept constantly in flux in January-March 2022 while being poorly understood by Moriarty, GZA, and JDC alike;

(f) Moriarty's abdication of any responsibility for jobsite safety evidenced by Moriarty's complete deference to JDC and GZA as "the experts" although Moriarty had a nondelegable duty to ensure jobsite safety on the subject project; and

(g) Moriarty's failure to adequately staff the subject project on March 26, 2022 with persons in responsible charge, managers, and engineers with resultant severe breakdown in command, control, coordination, and communication onsite.

31. On October 30, 2024 and November 1, 2024, the parties to the wrongful death lawsuit participated in mediation concerning the plaintiff's wrongful death claims. Although defense counsel retained for Moriarty and GZA by the defendant insurers had been requesting mediation since the early stages of the wrongful death lawsuit, the defendant insurers were not prepared for mediation on October 30, 2024 and November 1, 2024. Not only did the defendant insurers fail to make any settlement offer to the plaintiff but they also failed to clearly and fully disclose the applicable insurance coverages available to Moriarty and GZA and how these insurance coverages applied relative to each other and relative to other applicable insurance coverages. As a result, the assets of Moriarty and GZA were exposed not only to the plaintiff's claims of gross negligence but also to the plaintiff's claims of negligence not rising to the level of gross negligence.

32. On October 31, 2024, the defendant insurer, Allied, flatly rejected in writing the plaintiff's settlement demand of October 1, 2024, purporting in bad faith that Allied's insured, Moriarty's liability was not reasonably clear. Allied asserted the following sham defenses in its response:

(a) there had been "no determination of liability" as to Moriarty, any other defendant, or the third-party defendant, JDC, in the wrongful death lawsuit;

(b) "the amount of liability," if any, to be apportioned to Moriarty was "not reasonably clear" because Moriarty and Bulfinch had asserted crossclaims against co-defendants and the third-party defendant, JDC, in the wrongful death lawsuit; and

(c) Allied had "no present obligation" to provide insurance coverage to Moriarty because Moriarty was listed as an "additional insured under general liability policies issued to its subcontractor, JDC" and had been issued "various general liability policies of insurance that *potentially* appl[ied]" to the plaintiff's wrongful death claims (emphasis added).

33. On November 18, 2024, the plaintiff submitted, by certified mail, return receipt requested, her written Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demands to the defendant insurers. The Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demands described, *inter alia,* the defendant insurers' bad faith conduct, including their failure to conduct a reasonable investigation based upon all available information, their procrastination, their failure to effectuate prompt, fair, and equitable settlement, their bad faith conduct in mediation, and their failure to clearly and fully

disclose the applicable insurance coverages and the relationships between the applicable insurance coverages.

34. On December 17, 2024, the defendant insurer, Arch, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024, purporting that Arch's obligation to settle had not arisen because Arch was Moriarty's excess insurer and Moriarty's primary insurers had not tendered their policy limits. Arch's response failed to identify any of Moriarty's primary insurers and failed to disclose insurance information that would allow the plaintiff to determine the relationships between the applicable insurance coverages. Arch further purported that an "eminently reasonable" joint settlement offer had been made by unidentified insurers although any prior so-called joint settlement offers were conditional or provisional offers made by unidentified insurers, i.e., aside from being anonymous, these offers were conditioned on settlement of other claimants' contractual and bystander claims arising from the same incident as the plaintiff's wrongful death claims and thus did not constitute proper settlement offers.

35. On February 12, 2025, the defendant insurer, Allied, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024, purporting in bad faith that Moriarty's liability was not reasonably clear. Allied continued to assert the sham defenses asserted in its response of October 31, 2024. In addition, Allied purported that it was not required to make a reasonable settlement offer because the plaintiff's settlement demand exceeded Allied's policy limits.

36. On February 12, 2025, the defendant insurer, Endurance, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024, purporting in bad faith that GZA's liability was not reasonably clear. Endurance's response concerned *only* the plaintiff's claims asserted against GZA although Endurance provided applicable insurance coverage to *both* Moriarty and GZA. Endurance purported, *inter alia,* that it had made an "appropriate contribution to a Global Offer" while failing to disclose the amount of its contribution to the "Global Offer" and failing to identify the parties or insurers who funded the "Global Offer." Moreover, Endurance pointed out that the "Global Offer" was subject to "certain conditions" which Endurance did not care to state in its response but which included, *inter alia*, the plaintiff's "full and complete" release of GZA and Endurance. Endurance asserted the following sham defenses in its response:

(a) GZA "emphatically denie[d]" its liability for Mr. Monsini's wrongful death;

(b) the amount of damages to be apportioned to GZA was "very uncertain" because the plaintiff made wrongful death claims not only against GZA but also against Moriarty, Bulfinch, and HYM;

7

(c) Endurance was not required to make a reasonable settlement offer to the plaintiff because GZA had less than $5,000,000 of available insurance coverage which was "decreasing every day due to ongoing defense costs";

(d) other claimants had brought lawsuits against GZA that arose from the same incident as the plaintiff's wrongful death claims and these lawsuits inexplicably had to be considered *before* settling the plaintiff's wrongful death claims; and

(e) the plaintiff's "global" settlement demand in the amount of $65,000,000 had somehow "effectively precluded [Endurance] from attempting to settle" the plaintiff's wrongful death claims.

37. On February 12, 2025, the defendant insurer, Nautilus, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024, stating that Nautilus's policy limits had been exhausted because Nautilus had prioritized payment of defense costs and settlement of Bulfinch's contractual claims over settlement of the plaintiff's wrongful death claims and had chosen to completely exhaust the applicable insurance coverage to pay defense costs and settle Bulfinch's contractual claims.

38. On February 12, 2025, the defendant insurer, Navigators, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024, stating that Navigators' policy limits had been exhausted because Navigators had prioritized settlement of Bulfinch's contractual claims over settlement of the plaintiff's wrongful death claims and had chosen to pay the bulk of the applicable insurance coverage to settle Bulfinch's contractual claims and tender the undisclosed remainder to the plaintiff.

39. On February 12, 2025, the defendant insurer, Lloyd's, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024, purporting in bad faith that "reasonable" settlement offers had been made while failing to state any of the settlement offers and failing to disclose Lloyd's contribution, if any, to the settlement offers.

40. On February 12, 2025, the defendant insurer, XL, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024, purporting that XL's obligation to settle had not arisen because XL was Moriarty's excess insurer and Moriarty's primary insurers had not tendered their policy limits. XL's response failed to identify any of Moriarty's primary insurers and failed to disclose insurance information that would allow the plaintiff to determine the relationships between the applicable insurance coverages. XL further purported that a "reasonable" settlement offer had been made by unidentified insurers while failing to disclose XL's contribution, if any, to the settlement offer.

8

41. The defendant insurers failed to make a timely reasonable settlement offer within thirty (30) days after the mailing of the Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demands concerning the plaintiff's wrongful death claims.

42. The plaintiff's wrongful death claims were ultimately settled for $38,000,000 on February 19, 2025. The release reserved the plaintiff's right to pursue Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D claims against the defendant insurers.

43. In the course of settlement negotiations concerning the plaintiff's wrongful death claims, the defendant insurers negotiated with the plaintiff anonymously and in bad faith as evidenced by the following:

    (a) the defendant insurers failed to make any timely settlement offer although Moriarty and GZA's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

    (b) the defendant insurers asserted sham defenses, purporting in bad faith that Moriarty and GZA's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

    (c) the defendant insurers failed to produce the applicable insurance policies sought by the plaintiff;

    (d) the defendant insurers failed to clearly disclose the limits of the applicable insurance coverage available to Moriarty and GZA, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

    (e) the defendant insurers failed to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

    (f) the defendant insurers then proceeded in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

    (g) the defendant insurers negotiated jointly while failing to disclose agreements among them to make joint settlement offers;

(h) the defendant insurers negotiated anonymously, failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information;

(i) the defendant insurers insisted in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed; and

(j) it was not until *after* the plaintiff signed the settlement and release agreement pertaining to the plaintiff's wrongful death claims that the defendant insurers finally disclosed their identity and contributions to the settlement funds.

44. The defendant insurers negotiated anonymously and in bad faith in the above-described manner for purposes of precluding a timely fair settlement of the plaintiff's wrongful death claims and for purposes of obstructing the plaintiff's efforts to assert Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D claims against the defendant insurers.

45. The defendant insurers' above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

46. The defendant insurers' above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

47. The plaintiff has complied with all conditions precedent to filing Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D claims against the defendant insurers.

## COUNT I – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS
### (Against Allied World Assurance Company (U.S.), Inc.)

48. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

49. Allied violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

(a) failing to make any timely settlement offer although Allied's insured, Moriarty's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement

of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) failing to produce the applicable insurance policies sought by the plaintiff;

(c) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(d) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(e) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(f) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(g) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(h) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

50. Allied's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

51. Allied's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Allied World Assurance Company (U.S.), Inc., in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

11

**COUNT II – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS**
**(Against Arch Insurance Company)**

52. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

53. Arch violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

   (a) failing to make any timely settlement offer although Arch's insured, Moriarty's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

   (b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

   (c) failing to produce the applicable insurance policies sought by the plaintiff;

   (d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

   (e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

   (f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

   (g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

   (h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

54. Arch's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

55. Arch's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Arch Insurance Company, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

## COUNT III – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS
### (Against Endurance American Specialty Insurance Company d/b/a Sompo International Companies)

56. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

57. Endurance violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

(a) failing to make any timely settlement offer although Endurance's insured, Moriarty and GZA's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that Moriarty and GZA's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) failing to produce the applicable insurance policies sought by the plaintiff;

(d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty and GZA, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages

13

were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

58. Endurance's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

59. Endurance's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Endurance American Specialty Insurance Company d/b/a Sompo International Companies, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

## COUNT IV – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS
### (Against Nautilus Insurance Company)

60. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

61. Nautilus violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

14

(a) failing to make any timely settlement offer although Nautilus was contractually obligated to provide applicable insurance coverage to Moriarty whose liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) failing to produce the applicable insurance policies sought by the plaintiff;

(d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

62. Nautilus's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

63. Nautilus's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

15

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Nautilus Insurance Company, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

## COUNT V – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS
### (Against Navigators Specialty Insurance Company d/b/a The Hartford)

64. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

65. Navigators violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

(a) failing to make any timely settlement offer although Navigators' insured, Moriarty's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) failing to produce the applicable insurance policies sought by the plaintiff;

(d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

16

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

66. Navigators' above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

67. Navigators' above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Navigators Specialty Insurance Company d/b/a The Hartford, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

**COUNT VI – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS**
**(Against Starr Surplus Lines Insurance Company)**

68. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

69. Starr violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

(a) failing to make any timely settlement offer although Starr's insured, Moriarty's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) failing to produce the applicable insurance policies sought by the plaintiff;

17

(d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

70. Starr's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

71. Starr's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Starr Surplus Lines Insurance Company, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

**COUNT VII – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS
(Against Underwriters at Lloyd's, London d/b/a Ambridge Partners, LLC)**

72. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

18

73. Lloyd's violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

(a) failing to make any timely settlement offer although Lloyd's insured, Moriarty's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) failing to produce the applicable insurance policies sought by the plaintiff;

(d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

74. Lloyd's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

19

75. Lloyd's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Underwriters at Lloyd's, London d/b/a Ambridge Partners, LLC, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

## COUNT VIII – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS
### (Against XL Specialty Insurance Company d/b/a AXA XL)

76. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

77. XL violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

(a) failing to make any timely settlement offer although XL's insured, Moriarty's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) failing to produce the applicable insurance policies sought by the plaintiff;

(d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to

20

disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

78. XL's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

79. XL's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, XL Specialty Insurance Company d/b/a AXA XL, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.**

Respectfully submitted,
Plaintiff, Gina M. Ferrini, the Personal
Representative of the Estate of Peter F. Monsini,
by her Attorneys,

*/s/ Paul Mitchell*
Paul E. Mitchell, BBO #550491
pmitchell@mitchelldesimone.com
John C. DeSimone, BBO #550142
jdesimone@mitchelldesimone.com
Galina I. Razumovsky, BBO #692588
grazumovsky@mitchelldesimone.com
Mitchell & DeSimone
6 Beacon Street, Suite 900
Boston, MA 02108
(617) 737-8300

21

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Massachusetts Trial Court<br>Superior Court |
|---|---|---|
| | | **COUNTY** Suffolk Superior Court (Boston) |

| Plaintiff | Gina M. Ferrini, P. Rep. of Estate of Peter F. Monsini | Defendant: | Allied World Assurance Company (U.S.), Inc. |
|---|---|---|---|
| ADDRESS: | 18 Caroline Road, Easton, MA 02375 | ADDRESS: | 260 Franklin Street, Suite 930 |
| | | | Boston, MA 02110 |
| **Plaintiff Attorney:** | Paul E. Mitchell | Defendant: | Arch Insurance Company |
| ADDRESS: | Mitchell & DeSimone, 6 Beacon Street, Suite 900 | ADDRESS: | 99 High Street, 8th Floor |
| | Boston, MA 02108 | | Boston, MA 02110 |
| BBO: | 550491 | | |
| **Plaintiff Attorney:** | John C. DeSimone | Defendant: | Endurance American Specialty Insurance Company |
| ADDRESS: | Mitchell & DeSimone, 6 Beacon Street, Suite 900 | ADDRESS: | One Boston Place, 201 Washington Street, Suite 3610 |
| | Boston, MA 02108 | | Boston, MA 02108 |
| BBO: | 550142 | | |
| **Plaintiff Attorney:** | Galina I. Razumovsky | Defendant: | Nautilus Insurance Company |
| ADDRESS: | Mitchell & DeSimone, 6 Beacon Street, Suite 900 | ADDRESS: | 7233 East Butherus Drive |
| | Boston, MA 02108 | | Scottsdale, AZ 85260 |
| BBO: | 692588 | | |
| **Plaintiff Attorney:** | | Defendant: | Navigators Specialty Insurance Company |
| ADDRESS: | | ADDRESS: | 100 High Street, Suite 1025 |
| | | | Boston, MA 02110 |
| BBO: | | | |
| **Plaintiff Attorney:** | | Defendant: | Starr Surplus Lines Insurance Company |
| ADDRESS: | | ADDRESS: | One International Place, 11th Floor |
| | | | Boston, MA 02110 |
| BBO: | | | |
| **Plaintiff Attorney:** | | Defendant: | Underwriters at Lloyd's, London |
| ADDRESS: | | ADDRESS: | C/O Corporation Service Company |
| | | | 84 State Street |
| | | | Boston, MA 02109 |
| BBO: | | | |
| **Plaintiff Attorney:** | | Defendant: | XL Specialty Insurance Company |
| ADDRESS: | | ADDRESS: | 75 State Street |
| | | | Boston, MA 02109 |
| BBO: | | | |

**TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B99 | Other Tortious Action | F | ☒ YES ☐ NO |

*If "Other" please describe:    Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D violations

| Is there a claim under G.L. c. 93A? | Is there a class action under Mass. R. Civ. P. 23? |
|---|---|
| ☒ YES ☐ NO | ☐ YES ☒ NO |

**STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date

1. Total hospital expenses _____

2. Total doctor expenses _____

3. Total chiropractic expenses _____

4. Total physical therapy expenses _____

5. Total other expenses (describe below) _____

| |
|---|

Subtotal (1-5): _____ $0.00

B. Documented lost wages and compensation to date _____

C. Documented property damages to date _____

D. Reasonably anticipated future medical and hospital expenses _____

E. Reasonably anticipated lost wages _____

F. Other documented items of damages (describe below) $12,000,000.00

Damages due to Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D violations, to be doubled or tripled, and attorney's fees.

TOTAL (A-F): _____ $12,000,000

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

The plaintiff incurred financial losses and litigation costs, including attorney's fees, due to Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D violations.

## CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | Defendants' willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D. | $12,000,000.00 |
| | Total | $12,000,000.00 |

Signature of Attorney/Self-Represented Plaintiff: X /s/ Paul Mitchell | Date: December 17, 2025

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney: X /s/ Paul Mitchell | Date: December 17, 2025

# CIVIL ACTION COVER SHEET INSTRUCTIONS —
## SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality †*

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

### CN Contract/Business Cases

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* See Superior Court Standing Order 1-88 for an explanation of the tracking deadlines for each track designation: F, A, and X. On this page, the track designation for each case type is noted in parentheses.

†* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

‡ Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c. 231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party ‡

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

### TR Torts

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

### RP Summary Process (Real Property)

| | |
|---|---|
| S01 Summary Process - Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

### RP Real Property

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10, § 28 | (X) |

### AB Abuse/Harassment Prevention

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

### AA Administrative Civil Actions

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 Appeal Bond Denial | (X) |

### SO Sex Offender Review

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

### RC Restricted Civil Actions

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112, § 12S | (X) |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES  ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** — On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT** — If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND
## ACCURATELY, THE CASE MAY BE DISMISSED.

| NOTICE TO ATTORNEY GENERAL OF COMPLAINT ON CHAPTER 93A ACTION | DOCKET NUMBER 2584CV03504 A | Trial Court of Massachusetts The Superior Court |
|---|---|---|

**CASE NAME:**
Ferrini, Gina M. vs. Allied World Assurance Company (U.S.), Inc. et al

John E Powers, III
Suffolk County Civil

Andrea Joy Campbell
Consumer Protection Division
One Ashburton Place
Boston, MA 02108-1698

COURT NAME & ADDRESS
Suffolk County Superior Court - Civil
Suffolk County Courthouse, 12th Floor
Three Pemberton Square
Boston, MA 02108

    Pursuant to G.L. c. 93A, § 10, enclosed is a copy of the complaint seeking relief under G.L. c. 93A. The action was filed in this court on 12/17/2025.

DATE
01/15/2026

CLERK OF COURTS
John E Powers, III

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| SUFFOLK, ss. | SUPERIOR COURT<br>C.A. NO. 2584CV03504 |

GINA M. FERRINI,
as the Personal Representative
of the Estate of PETER F. MONSINI,
      Plaintiff

v.

ALLIED WORLD ASSURANCE COMPANY
(U.S.), INC.,
ARCH INSURANCE COMPANY,
ENDURANCE AMERICAN SPECIALTY
INSURANCE COMPANY,
NAUTILUS INSURANCE COMPANY,
NAVIGATORS SPECIALTY INSURANCE
COMPANY,
STARR SURPLUS LINES INSURANCE
COMPANY,
UNDERWRITERS AT LLOYD'S, LONDON, and
XL SPECIALTY INSURANCE COMPANY,
      Defendants

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE
2026 FEB -2 P 12: 08
JOHN E. POWERS III
CLERK MAGISTRATE

**AFFIDAVIT OF SERVICE OF PROCESS PURSUANT TO RULE 4 (F) M. R. C. P.**

I, Paul E. Mitchell, being duly sworn, counsel for the Plaintiff in the above-entitled action, on oath depose and state:

That I served the original Summons, copy of Summons and copy of Complaint in the subject case by mailing to the Defendant, President, Treasurer, Clerk, Cashier, Secretary, Agent Or Other Officer In Charge, Nautilus Insurance Company, 7233 East Butherus Drive, Scottsdale, AZ 85260 by "Certified Mail Receipt Requested", postage prepaid, and attached hereto receipts signed by the Defendant or someone on behalf of said Defendant.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 1·28 DAY

OF _____ 2026.

Respectfully submitted,
Plaintiff, Gina M. Ferrini, the Personal
Representative of the Estate of Peter F. Monsini,
by her Attorneys,

Paul E. Mitchell, BBO #550491
pmitchell@mitchelldesimone.com
Mitchell & DeSimone
6 Beacon Street, Suite 900
Boston, MA 02108
(617) 737-8300

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
1-18

1. Article Addressed to:



**President, Treasurer, Clerk, Cashier, Secretary, Agent Or Other Officer In Charge**

**Nautilus Insurance Company**

**7233 East Butherus Drive**

**Scottsdale, AZ 85260**

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

9590 9402 9450 5069 1391 75

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ___ Mail
☐ ___ Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)

7013 2630 0001 7182 8702

PS Form 3811, July 2020 PSN 7530-02-000-9053      Domestic Return Receipt

USPS TRACKING #

PHOENIX AZ 852

30 JAN 2026 PM 8 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 9450 5069 1391 75

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

*Mitchell & DeSimone*

*Attorneys at Law*

*6 Beacon Street, Suite 900*

*Boston, MA 02108*

Monsini - Long Arm.

-381825

# MITCHELL & DeSIMONE

## ATTORNEYS AT LAW

6 Beacon Street, Suite 900, Boston, Massachusetts 02108

(617) 737-8300

Writer's Direct Dial:
(617) 737-8391

Facsimile:
(617) 737-8390

Writer's Email:
pmitchell@mitchelldesimone.com

Worcester Office:

255 Park Avenue, Suite 1000
Worcester, MA 01609
Telephone (508) 756-8310

January 28, 2026

Suffolk Superior Court
Civil Clerk's Office
3 Pemberton Square, Suite 1200
Boston, MA 02108-1700

Re:  Gina M. Ferrini, as the Personal Representative of the Estate of Peter F. Monsini
v. Allied World Assurance Company (U.S.), Inc., Arch Insurance Company,
Endurance American Specialty Insurance Company, Nautilus Insurance
Company, Navigators Specialty Insurance Company, Starr Surplus Lines
Insurance Company, Underwriters at Lloyd's, London, and Xl Specialty
Insurance Company
Suffolk Superior Court, C.A. No. 2584CV03504

Dear Sir or Madam:

Enclosed for filing in the above referenced matter, please find the following:

**Affidavit of Service of Process Pursuant To Rule 4 (F) M.R.C.P. with attached return
receipt for President, Treasurer, Clerk, Cashier, Secretary, Agent Or Other Officer In
Charge, Nautilus Insurance Company, 7233 East Butherus Drive, Scottsdale, AZ 85260**

If you should have any questions, please do not hesitate to call me. Thank you for your
assistance in this matter.

Thank you for your assistance in this matter.

Very truly yours,

Paul E. Mitchell

PEM/kr
Enclosure

Date Filed 2/6/2026 5:40 PM
Superior Court - Suffolk
Docket Number 2584CV03504

4

SR

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT
                                                C.A. NO. 2584CV03504

GINA M. FERRINI,                              )
as the Personal Representative                )
of the Estate of PETER F. MONSINI,            )
                                              )
                                              )
                        Plaintiff,            )
                                              )
                                              )
v.                                            )
                                              )
                                              )
ALLIED WORLD ASSURANCE                        )
COMPANY (U.S.), INC.; ARCH                    )
INSURANCE COMPANY; ENDURANCE                  )
AMERICAN SPECIALTY INSURANCE                  )
COMPANY; NAUTILUS INSURANCE                   )
COMPANY; NAVIGATORS SPECIALTY                 )
INSURANCE COMPANY; STARR SURPLUS              )
LINES INSURANCE COMPANY;                      )
UNDERWRITERS AT LLOYD'S, LONDON;              )
and XL SPECIALTY INSURANCE COMPANY,           )
                                              )
                        Defendant.            )
                                              )

## DEFENDANT NAUTILUS INSURANCE COMPANY'S ASSENTED-TO MOTION TO EXTEND TIME TO RESPOND TO PLAINTIFF'S COMPLAINT

Defendant Nautilus Insurance Company ("Nautilus") submits this first request for an extension of time to respond to the Complaint filed in the above-captioned action. Nautilus seeks a short extension so that, if granted, its response to the Complaint will be due on February 27, 2026. Plaintiff assents to the requested extension. As further support for this Motion, Nautilus respectfully states as follows:

1.     Nautilus received a copy of the Summons and Complaint in this action on or about January 20, 2026.

2.     Pursuant to Rule 12(a)(1) of the Massachusetts Rules of Civil Procedure, Nautilus' response to the Complaint is due twenty (20) days from the date of service.

3.     Nautilus respectfully requests that the responsive pleading deadline be extended to February 27, 2026, so that Nautilus and its counsel may have sufficient time to formulate a response to the Complaint.

4.     Plaintiff, through counsel, has indicated assent to the requested extension.

5.     This is Nautilus' first request for an extension of time.

6.     The extension, if granted, will not result in the continuance of any scheduled hearing, conference, or trial and will not prejudice any party or unduly delay these proceedings.

7.     A proposed order granting this motion is attached as **Exhibit 1**.

WHEREFORE, Nautilus respectfully requests that the Court grant this Motion and extend the deadline for its response to the Complaint to February 27, 2026.

*[**Signatures on the Following Page**]*

2

Respectfully submitted,

**NAUTILUS INSURANCE COMPANY,**

By its attorneys

*/s/ Jonathan E. Small*
Jonathan E. Small (BBO# 672480)
Robinson & Cole LLP
One State Street
Hartford, CT 06103
Tel: (860) 275-8200
Fax: (860) 275-8299
E-mail: jsmall@rc.com
Allison M. Carbonaro (BBO# 707003)
Robinson & Cole LLP
One Boston Place, 26th Floor
Boston, Massachusetts 02108
Tel: (617) 557-5927
E-mail: acarbonaro@rc.com


**ASSENTED-TO:**
**GINA M. FERRINI, AS THE PERSONAL**
**REPRESENTATIVE OF THE ESTATE OF**
**PETER F. MONSINI,**

By her attorneys

*/s/ Paul E. Mitchell* (with permission)
Paul E. Mitchell, BBO #550491
pmitchell@mitchelldesimone.com John C.
DeSimone, BBO #550142
jdesimone@mitchelldesimone.com Galina I.
Razumovsky, BBO #692588
grazumovsky@mitchelldesimone.com
Mitchell & DeSimone
6 Beacon Street, Suite 900
Boston, MA 02108
(617) 737-8300

Dated: February 6, 2026

3

## CERTIFICATE OF COMPLIANCE WITH SUPERIOR COURT RULE 9C

I hereby certify that, before filing this Motion, counsel for Nautilus, Jonathan Small, conferred with counsel for Plaintiff regarding the relief requested herein, via telephone and email on February 5, 2026, and via email on February 6, 2026. Counsel for Plaintiff, Paul Mitchell, responded via email, confirming Plaintiff's assent to the relief requested herein on February 6, 2026.

*/s/ Jonathan E. Small*
Jonathan E. Small

## CERTIFICATE OF SERVICE

I, Allison M. Carbonaro, hereby certify that on February 6, 2026, I caused a true and accurate copy of the foregoing document to be served by electronic mail upon:

John C. Desimone, Esq.
Paul E. Mitchell, Esq.
Mitchell and DeSimone
Galina I. Razumovsky
6 Beacon Street, Suite 900
Boston, MA 02108
pmitchell@mitchelldesimone.com
jdesimone@mitchelldesimone.com
grazumovsky@mitchelldesimone.com

*/s/ Allison M. Carbonaro*
Allison M. Carbonaro

4

# EXHIBIT 1

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                            SUPERIOR COURT
                                                        C.A. NO. 2584CV03504

GINA M. FERRINI,                              )
as the Personal Representative                )
of the Estate of PETER F. MONSINI,            )
                                              )
                          Plaintiff,          )
                                              )
v.                                            )
                                              )
ALLIED WORLD ASSURANCE                        )
COMPANY (U.S.), INC.; ARCH                    )
INSURANCE COMPANY; ENDURANCE                  )
AMERICAN SPECIALTY INSURANCE                  )
COMPANY; NAUTILUS INSURANCE                   )
COMPANY; NAVIGATORS SPECIALTY                 )
INSURANCE COMPANY; STARR SURPLUS              )
LINES INSURANCE COMPANY;                      )
UNDERWRITERS AT LLOYD'S, LONDON;              )
and XL SPECIALTY INSURANCE COMPANY,           )
                                              )
                          Defendant.          )
_____)

**[PROPOSED] ORDER EXTENDING TIME FOR
NAUTILUS INSURANCE COMPANY TO RESPOND TO PLAINTIFF'S COMPLAINT**

Pursuant to Mass. R. Civ. P. 6(b), this Court hereby ORDERS that Defendant Nautilus

Insurance Company's time to answer or otherwise respond to Plaintiff's Complaint is extended

to February 27, 2026.

It is **SO ORDERED**

Date: _____

                                        _____
                                        Hon.

| | CIVIL DOCKET NO. | Trial Court of Massachusetts |
|---|---|---|
| **Summons** | 2584CV03504 | **The Superior Court** |

| CASE NAME: | |
|---|---|
| Gina M. Ferrini, as the Personal Representative of the Estate of Peter Monsini | John E. Powers III    Clerk of Courts |
| | Suffolk    County |
| **Plaintiff(s)** | COURT NAME & ADDRESS: |
| VS. | **Suffolk Superior Civil Court** |
| Allied World Assurance Company (U.S.), Inc., Arch Insurance Company, Endurance American Specialty Insurance Company, Nautilus Insurance Company, Navigators Specialty Insurance Company, Starr Surplus Lines Insurance Company, Underwriters At Lloyd's, London, and Xl Specialty Insurance Company, | **Three Pemberton Square** |
| | **Boston, MA. 02108** |
| **Defendant(s)** | |

THIS SUMMONS IS DIRECTED TO ___Underwriters At Lloyd's, London___ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the    Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. If you need more time to respond, you may request an extension of time in writing from the Court.

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

     a) Filing your **signed** original response with the Clerk's Office for Civil Business,    Court

Suffolk Superior Court, 3 Pembroke Street, Boston, MA 02108 (address), by mail, in person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

     b) Delivering or mailing a copy of your response to the Plaintiff's attorney/Plaintiff at the following address:

Paul E. Mitchell, Mitchell & DeSimone, 6 Beacon Street, Suite 900, Boston, MA 02108

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Court no more than 10 days after sending your Answer.

3. (cont.) Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Rule 12 of the Massachusetts Rules of Civil Procedure. If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. Required Information on All Filings.

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. __Michael D. Ricciuti__ , Chief Justice on _____ , 20____ . (Seal)

Clerk _____

Note: The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

## PROOF OF SERVICE OF PROCESS



**Suffolk County Sheriff's Department** • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

January 30, 2026

I hereby certify and return that on 1/27/2026 at 2:03 PM I served a true and attested copy of the Summons and Complaint in this action in the following manner: To wit, by delivering in hand to Kayleigh Marshall, , agent and person in charge at the time of service for Underwriters at Lloyd's London d/b/a Ambridge Partners, LLC at Corporation Service Company 84 State Street Boston, MA 02109 . In this service hereof it was necessary and I actually used a motor vehicle 1 miles. Administrative Fee ($15.00) Attest/Copies ($5.00) Basic Service Fee (IH) ($30.00) Conveyance ($0.30) Postage and Handling ($1.00) Travel ($1.00) Deputy Expense ($5.00) Total: $57.30

Deputy Sheriff  Gabrielle Drapeau

_____
*Deputy Sheriff*

THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date: