**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GINA M. FERRINI, as the Personal Representative of the Estate of Peter F. Monsini, <br><br> Plaintiff, <br><br> v. <br><br> ALLIED WORLD ASSURANCE COMPANY (U.S.), INC., ARCH INSURANCE COMPANY, ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, NAVIGATORS SPECIALTY INSURANCE COMPANY, STARR SURPLUS LINES INSURANCE COMPANY, UNDERWRITERS AT LLOYD'S LONDON and XL SPECIALTY INSURANCE COMPANY <br><br> Defendants. | CIVIL ACTION NO. 1:26-cv-10838-LTS |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANT STARR SURPLUS LINES INSURANCE COMPANY

Defendant Starr Surplus Lines Insurance Company ("Starr") moves to dismiss Count VI of the Complaint filed by Plaintiff Gina M. Ferrini, as the Personal Representative of the Estate of Peter F. Monsini ("Plaintiff"), with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff vaguely alleges that Starr and several other insurers violated G.L. c. 93A, §§ 2 and 9, and c. 176D by engaging in unfair and deceptive acts in connection with the settlement of an underlying wrongful death action. Yet the Complaint asserts identical statutory claims against all insurer defendants without identifying any specific conduct attributable to Starr.

Starr adopts and incorporates the arguments set forth by Defendant Certain Underwriters at Lloyd's, London Subscribing to Policy XS1137721 in Section I of the Argument section of its Motion to Dismiss (ECF No. 44) (the "Underwriters Motion"), which addresses the "claims common to all defendant insurers." *See* ECF No. 44, pp. 6-15. For the reasons articulated therein, several of the allegations asserted against Starr fail as a matter of law and must be dismissed.

Independent of those arguments, Count VI fails as to Starr for multiple additional reasons. First, the Complaint contains no factual allegations describing any conduct by Starr; it merely references the existence of the Starr excess policy and otherwise impermissibly lumps Starr together with the other defendants, in violation of the notice-pleading requirements of Fed. R. Civ. P. 8. Second, as an excess insurer, Starr had no obligations under G.L. c. 176D unless and until the underlying insurers tendered or were prepared to tender their policy limits, which is an essential factual predicate the Complaint never alleges. Third, the Complaint's own allegations establish that the underlying action settled within months of Plaintiff's initial demand and shortly after mediation began, foreclosing any plausible claim that the insurers failed to effectuate a prompt and fair settlement. For all of these reasons, Count VI should be dismissed with prejudice as to Starr..

## I.     FACTUAL ALLEGATIONS

### A.     THE STARR EXCESS POLICY.

Starr issued an excess liability policy to John Moriarty & Associates, Inc. ("JMA"), designated as Policy No. 1000587282211, which was in effect from August 4, 2021 to May 4, 2023 (the "Starr Excess Policy"). A true and correct copy of the Starr Excess Policy is attached as Exhibit A.[1]

The Starr Excess Policy provides limits of $5,000,000 per occurrence and in the aggregate. Ex. A, STARR0002.[2]  The Starr Excess Policy sits excess above $7,000,000 in underlying liability insurance issued to JMA by other insurers. The underlying policies consisted of: (1) a $2,000,000

---

[1]  When considering a motion to dismiss, courts may consider certain documents outside the complaint without converting the motion into one for summary judgment, including: "(1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to the plaintiff's claim; and (4) documents sufficiently referred to in the complaint." *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 573 n.1 (D. Mass. 2016), citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Here, all exhibits submitted with this Memorandum are either integral to the plaintiff's claims or sufficiently referenced in the Complaint.

[2]  The attached Starr Excess Policy as Exhibit A bears Bates numbers STARR0001 to STARR0032 on the top right corner. As such, Starr's citations to Exhibit A herein refer to those Bates numbers.

primary policy issued by Evanston Insurance Company ("Evanston"); and (2) a $5,000,000 first-layer excess policy issued by Navigators Specialty Insurance Company ("Navigators"). Ex. A, STARR0008.

Under the express terms of the Starr Excess Policy, Starr's coverage obligation is triggered only when the "Ultimate Net Loss" exceeds the $7,000,000 in underlying insurance provided by Evanston and Navigators. Ex. A, STARR0011. "Ultimate Net Loss" is defined, in relevant part, as "the total sum . . . actually paid or payable due to a claim or suit for which [JMA is] . . . liable either by a settlement to which we agreed or a final judgment." Ex. A, STARR0012.  The Starr Excess Policy further provides that it does "not apply unless and until the [JMA] or [JMA's] 'Underlying Insurance' has paid or is obligated to pay the full amount of the limits of the 'Underlying Insurance' [i.e., $7,000,000.]" Ex. A, STARR0016.

**B.      THE *MONSINI* ACTION.**

On March 26, 2022, Peter F. Monsini died while performing demolition work at a construction project at the Government Center Garage, One Congress Street in Boston, Massachusetts (the "Project"). *See* Compl. ¶ 11.

On July 21, 2022, Plaintiff, as the personal representative of Mr. Monsini's estate, filed a wrongful death action in Massachusetts Superior Court, Suffolk County, captioned *Ferrini v. John Moriarty & Associates, Inc., et al.*, C.A. No. 2284CV01656 (the "*Monsini* Action"). *See id.* ¶ 17. The defendants in the *Monsini* Action were: (1) JMA, the general contractor on the Project; (2) GZA GeoEnvironmental, Inc. ("GZA"), which provided engineering consulting services on the Project; (3) HYM Investment Group, LLC, a developer of the Project; and (4) Bulfinch Unit A Owner, LLC, also a developer of the Project. *See id.* ¶¶ 12–14, 17–18.

On October 1, 2024, Plaintiff issued her first settlement demand to defense counsel in the *Monsini* Action (not to the defendants' insurers, as alleged in the Complaint). *See* Compl. ¶ 30. A

3

85017\328587763.v1

true and accurate copy of the October 1, 2024 letter is attached hereto as <u>Exhibit B</u>. In that letter, the plaintiff demanded a global payment of $65,000,000 to settle all claims against all four defendants in the *Monsini* Action. <u>Ex. B</u>, p. 91.

The parties subsequently participated in mediation and engaged in additional settlement discussions. *See* Compl. ¶¶ 31, 42–43. On November 18, 2024, the plaintiff sent a purported demand letter pursuant to G.L. c. 93A to the insurers of the *Monsini* Action defendants, including Starr. *See id*. ¶ 33.

Ultimately, the *Monsini* Action settled on February 19, 2025 for a total payment of $38,000,000. *See id*. ¶ 42.

### C.   THE CURRENT ALLEGATIONS AGAINST STARR.

Plaintiff filed this action against Starr and seven other insurers that allegedly afforded liability coverage to either JMA or GZA in connection with the *Monsini* Action. Plaintiff asserts a separate – but identical – cause of action for "Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D violation" against each insurer Defendant arising out of the settlement of the *Monsini* Action.

Other than identifying that the Starr Excess Policy was issued to JMA (*see* Compl. ¶ 27), the remaining 37 paragraphs in the "FACTS" section of the Complaint make no reference to Starr whatsoever. *See* Compl. ¶¶ 10-47.  The Complaint provides no specific information concerning the Starr Excess Policy, any specific position Starr allegedly took with respect to settlement in the *Monsini* Action, and any refusal by Starr to pay the limits of the Starr Excess Policy in connection with the Plaintiff's claims. The Complaint likewise contains no allegations concerning the positions taken by the insurers in the underlying layers below Starr (i.e., Evanston and Navigators), whether the total underlying limits ($7,000,000) were ever offered such that the Starr Excess Policy would have been triggered, or whether Starr had any ability to offer its limits before the Starr Excess Policy was triggered.

4

Despite this complete lack of factual allegations, Count VI of the Complaint is asserted against Starr and alleges that it (along with all other defendants) engaged in the following vague (and, as to Starr, wholly inaccurate) unfair and deceptive acts or practices, allegedly in violation of G.L. c. 93A and c. 176D:

(a) failing to make a timely settlement offer although JMA and GZA's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that JMA and GZA's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claim over settlement of the plaintiff's wrongful death claims and disputing damages in bad faith;

(c) failing to produce applicable insurance policies sought by the plaintiff;

(d) failing to clearly disclose the limits of the of the applicable insurance coverage available to JMA and GZA, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) failing to make any settlement offer during mediation on October 30, 2024 and November 1, 2024;

(f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiffs repeat requests for this information; and

85017\328587763.v1

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiffs wrongful death claims while insurers funding the settlement remained undisclosed.

Compl. ¶ 69.

The Complaint does not identify any damages allegedly caused by Starr, or by any of the other defendant insurers.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679 (citation omitted). This standard of pleading does not require detailed factual allegations but does require more than labels and conclusions, "and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## III.    ARGUMENTS

As noted above, Starr adopts and incorporates the arguments set forth in Section I of the Argument section of the Underwriters Motion, which addresses the "claims common to all defendant insurers." *See* ECF No. 44. pp. 6-15. For the reasons articulated therein, all allegations concerning the purported acts identified in Subsections (c), (d), (f), (g), (h), and (i) of Paragraph 69 of the Complaint fail as a matter of law and must be dismissed.

85017\328587763.v1

In addition, Count VI independently fails as a matter of law for the separate reasons set forth below. For these multiple, independent deficiencies, Count VI should be dismissed in its entirety with prejudice.

## A.    THE COMPLAINT DOES NOT ALLEGE ANY FACTS ESTABLISHING AN ENTITLEMENT TO RELIEF AGAINST STARR.

The Complaint should be dismissed as to Starr because it contains no factual allegations plausibly establishing liability against Starr. The pleading is entirely devoid of any facts describing Starr's conduct, role, or alleged wrongdoing.

Although the Court must accept all well-pleaded factual allegations as true, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012), quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)). To survive a motion to dismiss for failure to state a claim, a plaintiff must do more than allege an entitlement to relief; it must show such an entitlement by alleging supporting facts. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

The Complaint falls far short of that standard.  Other than noting the existence of the Starr Excess Policy, the 38-paragraph "FACTS" section never references Starr and contains no factual allegations concerning Starr itself. The Complaint does not allege that Starr refused to settle or declined to offer its policy limits, nor does it identify any purported "sham defense" asserted by Starr. It likewise does not allege that Starr controlled settlement negotiations, participated in communications with Plaintiff, directed how settlement offers were conveyed, or instructed anyone to withhold information about insurance coverage or policy limits during the *Monsini* Action. In short, the Complaint alleges no facts describing any conduct by Starr that could give rise to liability.

85017\328587763.v1

This pleading defect is compounded by Plaintiff's impermissible practice of lumping all defendants together without distinguishing their alleged conduct. Such group pleading fails to satisfy the basic notice-pleading requirements of Fed. R. Civ. P. 8. *See Bagheri v. Galligan*, 160 F. App'x. 4, 5 (1st Cir. 2005) (finding complaint deficient because, among other things, it failed to state clearly which defendant or defendants committed each of the alleged wrongful acts); *Canales v. Gatzunis*, 979 F. Supp. 2d 164, 170 (D. Mass. 2013) ("In order to satisfy the minimal requirements of notice pleading, a plaintiff cannot 'lump' multiple defendants together and must 'state clearly which defendant or defendants committed each of the alleged wrongful acts.'"); *Decarvalho v. Telford*, No. 17-11224-MBB, 2017 U.S. Dist. LEXIS 135718, at *5 (D. Mass. Aug. 22, 2017) ("Here, by asserting his claims collectively against the defendants, and by failing to provide underlying factual support for liability for each cause of action asserted, [plaintiffs] fails to comply with Rule 8.").

Because the Complaint alleges no specific facts describing any actionable conduct by Starr, it fails to plausibly state a claim for relief against Starr. Count VI should therefore be dismissed.

**B.      THE COMPLAINT FAILS TO ESTABLISH THAT STARR VIOLATED G.L. C. 176D, § 3(9).**

Count VI should be dismissed because the Complaint does not plausibly allege that Starr, an excess insurer, owed any obligation under G.L. c. 176D, § 3(9) at the time of any alleged deceptive act or conduct.

As to an insurer's duty to effectuate a prompt settlement under Mass. Gen. Laws Ch. 176D § 3(9)(f), where a primary and an excess insurer are involved, "an excess insurer generally is not subject to the fair and prompt settlement obligations of Mass. Gen. Laws Ch. 176D § 3(9)(f) until the primary insurer has acted." *Wahlstrom v. Zurich Am. Ins. Co.*, No. 19-12208-LTS, 2022 U.S. Dist. LEXIS 243931, at *7-8 (D. Mass. Aug. 17, 2022), quoting *Mut. Ins. Co. v. Murphy*, 630 F. Supp. 2d 158, 164 (D. Mass. 2009); *see also Clegg v. Butler*, 424 Mass. 413, 421 n.8, 676 N.E.2d

85017\328587763.v1

1134, 1140 (1997) (explaining that the excess insurer had "no reason to examine or determine the extent of its liability" until the primary insurer "was prepared to address the possibility that the [plaintiffs] were entitled to its policy limits," because an "excess insurer has no obligation or incentive to make an explicit commitment until the primary insurer has acted"); *Rhodes v. AIG Domestic Claims, Inc.*, No. 05-1360-BLS1, 2008 Mass. Super. LEXIS 169, at \*66 (Mass. Super. Ct. June 3, 2008) (concluding that the excess insurer "had no duty to 'examine or determine the extent of its liability' because . . . the primary insurer[] had not yet indicated that it was prepared to tender its policy limits"), *aff'd as modified*, 78 Mass. App. Ct. 299, 937 N.E.2d 471 (2010), *aff'd*, 461 Mass. 486, 961 N.E.2d 1067 (2012).

This Court has recently held that this "no tender/no duty rule" applies not only to § 3(9)(f)'s settlement obligations but to the other obligations set forth in § 3(9) as well.  In *Costa v. Zurich Am. Ins. Co.*, No. 23-cv-11594-DJC, 2024 U.S. Dist. LEXIS 44135 (D. Mass. Mar. 13, 2024), the Court held that an excess insurer "could not have been expected to engage in an investigation of its own until it was clear that [the primary insurer] intended to tender its full policy limits," and therefore dismissed claims alleging violations of § 3(9)(c) and (d) against the excess insurer.  *Id*. at \*18-19, citing *Clegg*, 424 Mass. at 421 n.8.

Here, the Complaint here ignores these settled principles.  Plaintiff appears to contend that the alleged acts identified in Subsections (a) through (h) of Paragraph 69 of the Complaint constitute Starr's violations of G.L. c. 176D, § 3(9), but fails to acknowledge that any obligations owed by Starr are contingent upon the actions of the underlying insurers. The Complaint pleads no facts establishing that Starr ever owed any duty under the Starr Excess Policy. Critically, it does not allege that the underlying insurers (Evanston, the primary insurer, or Navigators, the first-layer excess insurer) tendered or were prepared to tender their policy limits. Nor does it allege any information concerning when or if the Starr excess layer was triggered.

9

Absent such allegations, Starr had no obligation under Massachusetts law to investigate, evaluate, or attempt settlement. Because the Complaint fails to plausibly allege that Starr's coverage obligations were ever triggered, it necessarily fails to state a claim that Starr violated G.L. c. 176D, § 3(9). Count VI must therefore be dismissed.

**C.    THERE IS NO G.L. C. 93A LIABILITY BECAUSE THE *MONSINI* ACTION SETTLEMENT WAS REASONABLY PROMPT.**

Count VI fails for the independent reason that the underlying action was resolved through a prompt and successful settlement.

An insurer commits an unfair claim settlement practice if it "[f]ail[s] to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." G.L. c. 176D, § 3(9)(f). The term "liability," however, encompasses both fault and damages. *Clegg v. Butler*, 424 Mass. at 421. Accordingly, insurers must be afforded time to investigate and evaluate claims before settlement obligations arise. *Id.* ("Insurers must be given the time to investigate claims thoroughly to determine their liability.")

Massachusetts law also recognizes that settlement negotiations are inherently a process rather than an instantaneous event. The Supreme Judicial Court, relying on the First Circuit Court of Appeals, has explained:

> Negotiating a settlement, particularly when the damages are unliquidated is, to an extent, a legitimate bargaining process. The statute [G. L. c. 176D, § 3 (9)] does not call for [a] defendant's final offer, but only one within the scope of reasonableness. Experienced negotiators do not make their final offer first off, and experienced negotiators do not expect it, or take seriously a representation that, it is.

*Bobick v. United States Fid. & Guar. Co.*, 439 Mass. 652, 662, 790 N.E.2d 653, 660 (2003), quoting *Forcucci v. USF&G*, 11 F.3d 1, 2 (1st Cir. 1993).

10

85017\328587763.v1

Consistent with these principles, courts have rejected Chapter 93A and Chapter 176D claims even where settlement negotiations extended over substantial periods. For example, in *Costa v. Zurich Am. Ins. Co.*, No. 23-cv-11594-DJC, 2024 U.S. Dist. LEXIS 44135 (D. Mass. Mar. 13, 2024), this Court dismissed G.L. c. 176D, § 3(9) claims against an excess insurer despite the fact that the insurer had participated in settlement negotiations in an underlying wrongful death action for approximately nine months. *See id*. at *18 and n.5.

Here, the undisputed timeline forecloses any plausible claim of an unfair settlement practice. Plaintiff issued her first settlement demand in the *Monsini* Action on October 1, 2024, seeking a global payment of $65 million to resolve claims against four defendants. (Compl. ¶ 30; Ex. B at 91.) The demand was directed to numerous insurers. Within thirty days, the parties participated in mediation and continued settlement discussions thereafter. Ultimately, on February 19, 2025, less than five months after Plaintiff made her initial demand, the *Monsini* Action settled for $38 million.

This timeline reflects exactly the type of legitimate negotiation process contemplated by Massachusetts law. Even assuming, *arguendo*, that Starr had any settlement obligations in connection with the *Monsini* Action, Plaintiff cannot plausibly claim that Starr violated G.L. c. 176D, § 3(9)(f). Insurers are entitled to time to investigate, evaluate liability and damages, and engage in meaningful settlement negotiations. Here, the complex underlying case, against multiple defendants and involving numerous insurers, settled within months of the initial demand and shortly after mediation began – an objectively reasonable timeframe as a matter of law.

Because the Complaint's own allegations demonstrate that the *Monsini* Action was resolved through a prompt and reasonable settlement process, Plaintiff cannot plausibly establish a violation of G.L. c. 176D or liability under G.L. c. 93A. Count VI should therefore be dismissed.

85017\328587763.v1

## IV.    CONCLUSION

Accordingly, Plaintiff fails to state a claim for relief against Starr and this Court should dismiss with prejudice Count VI in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

WHEREFORE, for the reasons stated in the Underwriters Motion (*see* ECF No. 44, pp. 6-15) and herein, Defendant Starr Surplus Lines Insurance Company respectfully requests that an Order be entered granting its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and for such other relief as the Court deems necessary or appropriate.

Defendant STARR SURPLUS LINES
INSURANCE COMPANY
By: Their Attorney

Dated: March 16, 2026

*/s/ Daniel R. Conte*
Daniel R. Conte, BBO #686908
HINSHAW & CULBERTSON LLP
53 State Street
27th Floor
Boston, MA 02109
617-213-7000
dconte@hinshawlaw.com

## CERTIFICATE OF SERVICE

I, Daniel R. Conte, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Daniel R. Conte
Daniel R. Conte

85017\328587763.v1