UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GINA M. FERRINI,<br>as the Personal Representative<br>of the Estate of PETER F. MONSINI,<br>    Plaintiff<br><br>v.<br><br>ALLIED WORLD ASSURANCE COMPANY (U.S.),<br>INC.,<br>ARCH INSURANCE COMPANY,<br>ENDURANCE AMERICAN SPECIALTY INSURANCE<br>COMPANY,<br>NAUTILUS INSURANCE COMPANY,<br>NAVIGATORS SPECIALTY INSURANCE COMPANY,<br>STARR SURPLUS LINES INSURANCE COMPANY,<br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,<br>SUBSCRIBING TO POLICY XS1137721,<br>XL SPECIALTY INSURANCE COMPANY, and<br>EVANSTON INSURANCE COMPANY,<br>    Defendants | CIVIL ACTION NO. 1:26-cv-10838-LTS |

**FIRST AMENDED COMPLAINT AND JURY CLAIM**

1. The plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, is an individual residing at 18 Caroline Road, Easton, Bristol County, Massachusetts.

2. The defendant, Allied World Assurance Company (U.S.), Inc. (Allied), is a for-profit foreign corporation with places of business located at 260 Franklin Street, Suite 930, Boston, Suffolk County, Massachusetts and 199 Water Street, 24th Floor, New York, New York.

3. The defendant, Arch Insurance Company (Arch), is a for-profit foreign corporation with places of business located at 99 High Street, 8th Floor, Boston, Suffolk County, Massachusetts and 210 Hudson Street, Suite 300, Harborside 3, Jersey City, New Jersey.

4. The defendant, Endurance American Specialty Insurance Company d/b/a Sompo International Companies (Endurance), is a for-profit foreign corporation with places of business located at One Boston Place, 201 Washington Street, Suite 3610, Boston, Suffolk County, Massachusetts and 1221 Avenue of the Americas, New York, New York.

5.  The defendant, Nautilus Insurance Company (Nautilus), is a for-profit foreign corporation with places of business located at 7233 East Butherus Drive, Scottsdale, Arizona and 101 Hudson Street, 25th Floor, Suite 2550, Jersey City, New Jersey.

6.  The defendant, Navigators Specialty Insurance Company d/b/a The Hartford (Navigators), is a for-profit foreign corporation with places of business located at 100 High Street, Suite 1025, Boston, Suffolk County, Massachusetts and 83 Wooster Heights, Danbury, Connecticut.

7.  The defendant, Starr Surplus Lines Insurance Company (Starr), is a for-profit foreign corporation with places of business located at One International Place, 11th Floor, Boston, Suffolk County, Massachusetts and 399 Park Avenue, 2nd Floor, New York, New York.

8.  The defendant, Certain Underwriters at Lloyd's, London Subscribing to Policy XS1137721 (Lloyd's), is a non-corporate entity consisting of Syndicate BRT 2987, Syndicate BRT 2988, and Syndicate KII 1618, unincorporated associations domiciled in the United Kingdom, with the registered agent, Corporation Service Company, located at 84 State Street, Boston, Suffolk County, Massachusetts.

9.  The defendant, XL Specialty Insurance Company d/b/a AXA XL (XL), is a for-profit foreign corporation with places of business located at 75 State Street, Boston, Suffolk County, Massachusetts and One World Financial Center, 225 Liberty Street, 40th Floor, New York, New York.

10. The defendant, Evanston Insurance Company (Evanston), is a for-profit foreign corporation with a place of business located at 10275 West Higgins Road, Suite 750, Rosemont, Illinois.

### FACTS

11. The plaintiff incorporates herein the preceding paragraphs of this Complaint as if fully set forth herein.

12. On March 26, 2022, Peter F. Monsini was an employee of JDC Demolition Company, Inc. (JDC) and was assigned to perform demolition work that involved operating a Kobelco mini excavator on the 8th floor of the Government Center Garage located at One Congress Street, Boston, Suffolk County, Massachusetts (the Garage) to hammer in place a standalone 9th floor T-beam.  While Mr. Monsini was doing so, the T-beam rolled over and fell, causing a partial collapse of the Garage, including the 8th floor where he was located.  The T-beam had an eccentric center of gravity due to uneven loading and its north end connection was later found to be deficient due to having a flat plate in lieu of an angle clip.  As a result of the partial collapse of the Garage, Mr. Monsini fell into the rubble and died.

2

13. At all relevant times, John Moriarty & Associates, Inc. (Moriarty) was the general contractor on the subject construction site and had a contract with JDC obligating JDC to perform a partial demolition of the Garage.

14. At all relevant times, JDC had a contract with GZA GeoEnvironmental, Inc. (GZA) obligating GZA to perform a pre-demolition survey, develop an engineering plan for the demolition of the Garage, and perform regular field visits to ascertain the stability of the Garage.

15. At all relevant times, Bulfinch Unit A Owner, LLC (Bulfinch) and The HYM Investment Group, LLC (HYM) owned and controlled the subject construction site, acted as developers overseeing the subject project, and had a contract with Moriarty obligating Moriarty to perform the demolition of the Garage in conformance with contract documents, including GZA's demolition plan, and to oversee the work performed by subcontractors "of every tier," including JDC and GZA.

16. On June 17, 2022, GZA issued a report of its post-collapse structural evaluation of the Garage which uncovered 604 "structurally relevant deficiencies," including numerous deficient T-beam connections which were in the same deficient condition but remained undetected prior to the collapse.

17. On June 22, 2022, the plaintiff mailed to Moriarty and HYM her notices of claim pertaining to Mr. Monsini's wrongful death. The notices of claim included requests to disclose the applicable insurance coverage.

18. On July 21, 2022, the plaintiff, Gina M. Ferrini, as the Personal Representative of the Estate of Peter F. Monsini, brought a wrongful death lawsuit against Moriarty and HYM, C.A. No. 2284CV01656C, at the Suffolk Superior Court. The wrongful death lawsuit arose from the fatal construction site incident of March 26, 2022 where Mr. Monsini fell to his death during the collapse of the Garage.

19. On August 22, 2022, the plaintiff amended her complaint in the wrongful death lawsuit, adding GZA and Bulfinch as defendants.

20. On September 23, 2022, the Occupational Safety and Health Administration (OSHA) issued citations to Moriarty and JDC based on the OSHA investigation of the collapse. The OSHA found, *inter alia*, that Moriarty and JDC committed the following violations:

(a) Moriarty violated 29 C.F.R. § 1926.20(b)(2) by failing to initiate and maintain programs providing for frequent and regular inspections of the subject construction site by a competent person;

(b) Moriarty violated 29 C.F.R. § 1926.21(b)(2) by failing to instruct each employee regarding the recognition and avoidance of unsafe conditions and regarding the applicable regulations concerning hazards or other exposure to injury on the subject construction site;

(c) Moriarty violated 29 C.F.R. § 1926.856(a) by failing to ensure that the 7th through 9th floors/working surfaces of the Garage were of sufficient strength to support the imposed load of mechanical equipment;

(d) JDC violated 29 C.F.R. § 1926.20(b)(1) by failing to maintain and enforce accident prevention programs developed by JDC;

(e) JDC violated 29 C.F.R. § 1926.21(b)(2) by failing to instruct each employee regarding the recognition and avoidance of unsafe conditions and regarding the applicable regulations concerning hazards or other exposure to injury on the subject construction site;

(f) JDC violated 29 C.F.R. § 1926.856(a) by failing to ensure that the 7th through 9th floors/working surfaces of the Garage were of sufficient strength to support the imposed load of mechanical equipment; and

(g) JDC violated 29 C.F.R. § 1904.29(b)(4) by failing to properly maintain the Log of Work-Related Injuries and Illnesses as mandated by the OSHA.

21. GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022 clearly established Moriarty and GZA's liability. Most glaringly, GZA's post-collapse structural evaluation and the OSHA investigation showed that Moriarty and GZA failed to detect numerous preexisting structural deficiencies prior to the demolition of the Garage and ensure the structural stability of the Garage while its demolition was ongoing prior to the collapse.

22. At all relevant times, the defendant insurer, Allied, provided insurance coverage under Policy No. 0313-1792 to Moriarty relative to the plaintiff's wrongful death claims.

23. At all relevant times, the defendant insurer, Arch, provided insurance coverage under Policy No. 11PKG8931806 to Moriarty relative to the plaintiff's wrongful death claims.

24. At all relevant times, the defendant insurer, Endurance, provided insurance coverage under Policy No. ELD30009744700 to Moriarty relative to the plaintiff's wrongful death claims.

25. At all relevant times, the defendant insurer, Endurance, provided insurance coverage under Policy No. DPL30016418700 to GZA relative to the plaintiff's wrongful death claims.

26. At all relevant times, the defendant insurer, Nautilus, provided insurance coverage under Policy Nos. GLP2034207-11, FFX2034215-11 to JDC and was contractually obligated to provide insurance coverage to Moriarty under these policies relative to the plaintiff's wrongful death claims.

4

27. At all relevant times, the defendant insurer, Navigators, provided insurance coverage under Policy No. LA21EXCZ06TCZIC to Moriarty relative to the plaintiff's wrongful death claims.

28. At all relevant times, the defendant insurer, Starr, provided insurance coverage under Policy No. 1000587282211 to Moriarty relative to the plaintiff's wrongful death claims.

29. At all relevant times, the defendant insurer, Lloyd's, provided insurance coverage under Policy No. XS1137721 to Moriarty relative to the plaintiff's wrongful death claims.

30. At all relevant times, the defendant insurer, XL, provided insurance coverage under Policy No. US00068515LI21A to Moriarty relative to the plaintiff's wrongful death claims.

31. At all relevant times, the defendant insurer, Evanston, provided insurance coverage under Policy Nos. MKLV2PBC001209, MKLV1EUE101030, GL0-5599317-01, 1000584942211 to Moriarty relative to the plaintiff's wrongful death claims.

32. On October 1, 2024, long after discovery more than clearly established Moriarty and GZA's liability for Mr. Monsini's wrongful death, the plaintiff submitted her settlement demand to the defendant insurers.  The settlement demand pointed out the defendant insurers' duty under Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D, § 3 to timely effectuate a reasonable settlement.  The settlement demand also pointed out that Moriarty and GZA's liability was more than reasonably clear as evidenced, *inter alia*, by the following:

    (a) GZA's failure to perform a pre-demolition engineering survey mandated by 29 C.F.R. § 1926.850(a);

    (b) GZA's failure to adequately staff the subject project with licensed structural engineers;

    (c) GZA's untenable position that JDC was solely responsible for ascertaining structural conditions in the field and was able to competently develop demolition procedures safer than those included in GZA's demolition plan despite JDC's known lack of any engineering expertise;

    (d) Moriarty's failure to recognize that GZA disclaimed in its contract with JDC any responsibility for ascertaining structural conditions in the field, which essentially amounted to an unlawful contract term purportedly allowing GZA to develop an unsafe demolition plan noncompliant with the most basic principles of engineering practice;

    (e) Moriarty's prioritization of work progress over jobsite safety evidenced by the fact that Moriarty kept JDC and GZA under constant pressure to facilitate work progress

5

and, as a result, GZA's demolition plan was kept constantly in flux in January-March 2022 while being poorly understood by Moriarty, GZA, and JDC alike;

(f) Moriarty's abdication of any responsibility for jobsite safety evidenced by Moriarty's complete deference to JDC and GZA as "the experts" although Moriarty had a nondelegable duty to ensure jobsite safety on the subject project; and

(g) Moriarty's failure to adequately staff the subject project on March 26, 2022 with persons in responsible charge, managers, and engineers with resultant severe breakdown in command, control, coordination, and communication onsite.

33. On October 30, 2024 and November 1, 2024, the parties to the wrongful death lawsuit participated in mediation concerning the plaintiff's wrongful death claims. Although defense counsel retained for Moriarty and GZA by the defendant insurers had been requesting mediation since the early stages of the wrongful death lawsuit, the defendant insurers were not prepared for mediation on October 30, 2024 and November 1, 2024. Not only did the defendant insurers fail to make any settlement offer to the plaintiff but they also failed to clearly and fully disclose the applicable insurance coverages available to Moriarty and GZA and how these insurance coverages applied relative to each other and relative to other applicable insurance coverages. As a result, the assets of Moriarty and GZA were exposed not only to the plaintiff's claims of gross negligence but also to the plaintiff's claims of negligence not rising to the level of gross negligence.

34. On October 31, 2024, the defendant insurer, Allied, flatly rejected in writing the plaintiff's settlement demand of October 1, 2024, purporting in bad faith that Allied's insured, Moriarty's liability was not reasonably clear. Allied asserted the following sham defenses in its response:

(a) there had been "no determination of liability" as to Moriarty, any other defendant, or the third-party defendant, JDC, in the wrongful death lawsuit;

(b) "the amount of liability," if any, to be apportioned to Moriarty was "not reasonably clear" because Moriarty and Bulfinch had asserted crossclaims against co-defendants and the third-party defendant, JDC, in the wrongful death lawsuit; and

(c) Allied had "no present obligation" to provide insurance coverage to Moriarty because Moriarty was listed as an "additional insured under general liability policies issued to its subcontractor, JDC" and had been issued "various general liability policies of insurance that *potentially* appl[ied]" to the plaintiff's wrongful death claims (emphasis added).

35. On November 18, 2024, the plaintiff submitted, by certified mail, return receipt requested, her written Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demands to the defendant insurers. The Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demands described, *inter alia,* the defendant insurers' bad faith conduct, including their failure to conduct a reasonable investigation based upon all available

6

information, their procrastination, their failure to effectuate prompt, fair, and equitable settlement, their bad faith conduct in mediation, and their failure to clearly and fully disclose the applicable insurance coverages and the relationships between the applicable insurance coverages.

36. On December 17, 2024, the defendant insurer, Arch, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024, purporting that Arch's obligation to settle had not arisen because Arch was Moriarty's excess insurer and Moriarty's primary insurers had not tendered their policy limits. Arch's response failed to identify any of Moriarty's primary insurers and failed to disclose insurance information that would allow the plaintiff to determine the relationships between the applicable insurance coverages. Arch further purported that an "eminently reasonable" joint settlement offer had been made by unidentified insurers although any prior so-called joint settlement offers were conditional or provisional offers made by unidentified insurers, i.e., aside from being anonymous, these offers were conditioned on settlement of other claimants' contractual and bystander claims arising from the same incident as the plaintiff's wrongful death claims and thus did not constitute proper settlement offers.

37. On February 12, 2025, the defendant insurer, Allied, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024, purporting in bad faith that Moriarty's liability was not reasonably clear. Allied continued to assert the sham defenses asserted in its response of October 31, 2024. In addition, Allied purported that it was not required to make a reasonable settlement offer because the plaintiff's settlement demand exceeded Allied's policy limits.

38. On February 12, 2025, the defendant insurer, Endurance, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024, purporting in bad faith that GZA's liability was not reasonably clear. Endurance's response concerned *only* the plaintiff's claims asserted against GZA although Endurance provided applicable insurance coverage to *both* Moriarty and GZA. Endurance purported, *inter alia,* that it had made an "appropriate contribution to a Global Offer" while failing to disclose the amount of its contribution to the "Global Offer" and failing to identify the parties or insurers who funded the "Global Offer." Moreover, Endurance pointed out that the "Global Offer" was subject to "certain conditions" which Endurance did not care to state in its response but which included, *inter alia*, the plaintiff's "full and complete" release of GZA and Endurance. Endurance asserted the following sham defenses in its response:

(a) GZA "emphatically denie[d]" its liability for Mr. Monsini's wrongful death;

(b) the amount of damages to be apportioned to GZA was "very uncertain" because the plaintiff made wrongful death claims not only against GZA but also against Moriarty, Bulfinch, and HYM;

7

(c) Endurance was not required to make a reasonable settlement offer to the plaintiff because GZA had less than $5,000,000 of available insurance coverage which was "decreasing every day due to ongoing defense costs";

(d) other claimants had brought lawsuits against GZA that arose from the same incident as the plaintiff's wrongful death claims and these lawsuits inexplicably had to be considered *before* settling the plaintiff's wrongful death claims; and

(e) the plaintiff's "global" settlement demand in the amount of $65,000,000 had somehow "effectively precluded [Endurance] from attempting to settle" the plaintiff's wrongful death claims.

39. On February 12, 2025, the defendant insurer, Nautilus, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024, stating that Nautilus's policy limits had been exhausted because Nautilus had prioritized payment of defense costs and settlement of Bulfinch's contractual claims over settlement of the plaintiff's wrongful death claims and had chosen to completely exhaust the applicable insurance coverage to pay defense costs and settle Bulfinch's contractual claims.

40. On February 12, 2025, the defendant insurer, Navigators, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024, stating that Navigators' policy limits had been exhausted because Navigators had prioritized settlement of Bulfinch's contractual claims over settlement of the plaintiff's wrongful death claims and had chosen to pay the bulk of the applicable insurance coverage to settle Bulfinch's contractual claims and tender the undisclosed remainder to the plaintiff.

41. On February 12, 2025, the defendant insurer, Lloyd's, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024, purporting in bad faith that "reasonable" settlement offers had been made while failing to state any of the settlement offers and failing to disclose Lloyd's contribution, if any, to the settlement offers.

42. On February 12, 2025, the defendant insurer, XL, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024, purporting that XL's obligation to settle had not arisen because XL was Moriarty's excess insurer and Moriarty's primary insurers had not tendered their policy limits.  XL's response failed to identify any of Moriarty's primary insurers and failed to disclose insurance information that would allow the plaintiff to determine the relationships between the applicable insurance coverages.  XL further purported that a "reasonable" settlement offer had been made by unidentified insurers while failing to disclose XL's contribution, if any, to the settlement offer.

8

43. On February 12, 2025, the defendant insurer, Evanston, flatly rejected in writing the plaintiff's Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demand of November 18, 2024. Evanston, by and through its agent, Markel Service, Inc. (Markel), stated with regard to its Policy No. MKLV2PBC001209 that Evanston had already tendered its policy limits to settle Bulfinch's contractual claims. Evanston similarly stated with regard to its Policy No. MKLV1EUE101030 that Evanston had already tendered its policy limits to settle other claimants' claims and the tender had been accepted "subject to certain conditions" which Evanston did not care to disclose. Evanston further purported in bad faith that liability was not reasonably clear and Evanston had no duty to make a settlement offer because the plaintiff's settlement demand exceeded its policy limits and additional unidentified defenses might also exist. To the extent that Markel handled the plaintiff's claims on behalf of Evanston, Evanston is vicariously liable for its agent, Markel's improper claim handling in the course of employment.

44. The defendant insurers failed to make a timely reasonable settlement offer within thirty (30) days after the mailing of the Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D settlement demands concerning the plaintiff's wrongful death claims.

45. The plaintiff's wrongful death claims were ultimately settled for $38,000,000 on February 19, 2025. The release reserved the plaintiff's right to pursue Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D claims against the defendant insurers.

46. In the course of settlement negotiations concerning the plaintiff's wrongful death claims, the defendant insurers negotiated with the plaintiff anonymously and in bad faith as evidenced by the following:

(a) the defendant insurers failed to make any timely settlement offer although Moriarty and GZA's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) the defendant insurers asserted sham defenses, purporting in bad faith that Moriarty and GZA's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) the defendant insurers failed to produce the applicable insurance policies sought by the plaintiff;

(d) the defendant insurers failed to clearly disclose the limits of the applicable insurance coverage available to Moriarty and GZA, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent

9

denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) the defendant insurers failed to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(f) the defendant insurers then proceeded in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(g) the defendant insurers negotiated jointly while failing to disclose agreements among them to make joint settlement offers;

(h) the defendant insurers negotiated anonymously, failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information;

(i) the defendant insurers insisted in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed; and

(j) it was not until *after* the plaintiff signed the settlement and release agreement pertaining to the plaintiff's wrongful death claims that the defendant insurers finally disclosed their identity and contributions to the settlement funds.

47. The defendant insurers negotiated anonymously and in bad faith in the above-described manner for purposes of precluding a timely fair settlement of the plaintiff's wrongful death claims and for purposes of obstructing the plaintiff's efforts to assert Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D claims against the defendant insurers.

48. The defendant insurers' above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

49. The defendant insurers' above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

50. The plaintiff has complied with all conditions precedent to filing Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D claims against the defendant insurers.

**COUNT I – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS**
**(Against Allied World Assurance Company (U.S.), Inc.)**

51. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

52. Allied violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

(a) failing to make any timely settlement offer although Allied's insured, Moriarty's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) failing to produce the applicable insurance policies sought by the plaintiff;

(d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

11

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

53. Allied's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

54. Allied's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Allied World Assurance Company (U.S.), Inc., in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

### COUNT II – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS
### (Against Arch Insurance Company)

55. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

56. Arch violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

(a) failing to make any timely settlement offer although Arch's insured, Moriarty's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) failing to produce the applicable insurance policies sought by the plaintiff;

(d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

57. Arch's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

58. Arch's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Arch Insurance Company, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

### COUNT III – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS
### (Against Endurance American Specialty Insurance Company d/b/a Sompo International Companies)

59. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

60. Endurance violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

(a) failing to make any timely settlement offer although Endurance's insured, Moriarty and GZA's liability was clearly established by GZA's post-collapse structural

evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that Moriarty and GZA's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) failing to produce the applicable insurance policies sought by the plaintiff;

(d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty and GZA, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

61. Endurance's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

62. Endurance's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

14

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Endurance American Specialty Insurance Company d/b/a Sompo International Companies, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

### COUNT IV – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS
#### (Against Nautilus Insurance Company)

63. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

64. Nautilus violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

    (a) failing to make any timely settlement offer although Nautilus was contractually obligated to provide applicable insurance coverage to Moriarty whose liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

    (b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

    (c) failing to produce the applicable insurance policies sought by the plaintiff;

    (d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

    (e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

    (f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

15

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

65. Nautilus's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

66. Nautilus's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Nautilus Insurance Company, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

### COUNT V – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS
### (Against Navigators Specialty Insurance Company d/b/a The Hartford)

67. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

68. Navigators violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

(a) failing to make any timely settlement offer although Navigators' insured, Moriarty's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) failing to produce the applicable insurance policies sought by the plaintiff;

16

(d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

69. Navigators' above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

70. Navigators' above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Navigators Specialty Insurance Company d/b/a The Hartford, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

### COUNT VI – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS
### (Against Starr Surplus Lines Insurance Company)

71. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

72. Starr violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

(a) failing to make any timely settlement offer although Starr's insured, Moriarty's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) failing to produce the applicable insurance policies sought by the plaintiff;

(d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

73. Starr's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

74. Starr's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Starr Surplus Lines Insurance Company, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

**COUNT VII – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS (Against Certain Underwriters at Lloyd's, London Subscribing to Policy XS1137721)**

75. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

76. Lloyd's violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

(a) failing to make any timely settlement offer although Lloyd's insured, Moriarty's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) failing to produce the applicable insurance policies sought by the plaintiff;

(d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to

disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

77. Lloyd's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

78. Lloyd's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Certain Underwriters at Lloyd's, London Subscribing to Policy XS1137721, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

### COUNT VIII – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS
### (Against XL Specialty Insurance Company d/b/a AXA XL)

79. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

80. XL violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

(a) failing to make any timely settlement offer although XL's insured, Moriarty's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

(b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement

20

of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

(c) failing to produce the applicable insurance policies sought by the plaintiff;

(d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

(e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

(f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

(g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

(h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

(i) insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

81. XL's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

82. XL's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, XL Specialty Insurance Company d/b/a AXA XL, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

## COUNT IX – MASS. GEN. LAWS CH. 93A, §§ 2, 9 AND CH. 176D VIOLATIONS
### (Against Evanston Insurance Company)

83. The plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

84. Evanston violated Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D in the handling of the plaintiff's wrongful death claims by engaging in the following unfair and deceptive acts or practices in the business of insurance:

    (a) failing to make any timely settlement offer although Evanston's insured, Moriarty's liability was clearly established by GZA's post-collapse structural evaluation report of June 17, 2022 and the OSHA citations issued on September 23, 2022;

    (b) asserting sham defenses, purporting in bad faith that Moriarty's liability was not reasonably clear while failing to make an objective liability determination and instead making liability determinations "focused on defensive posturing," disputing in bad faith the amount of damages, and prioritizing payment of defense costs and settlement of contractual and bystander claims over settlement of the plaintiff's wrongful death claims;

    (c) failing to produce the applicable insurance policies sought by the plaintiff;

    (d) failing to clearly disclose the limits of the applicable insurance coverage available to Moriarty, the relationships between the applicable insurance coverages and the order in which the insurance coverages applied, pertinent denials of insurance coverage, pertinent reservations of rights, and how the applicable insurance coverages were affected by eroding insurance policies and by contractual and bystander claims asserted by other claimants;

    (e) failing to make any settlement offer during the two-day mediation on October 30, 2024 and November 1, 2024;

    (f) proceeding in bad faith to make joint conditional or provisional settlement offers, i.e., improper settlement offers made jointly by anonymous insurers and conditioned on settlement of other claimants' contractual and bystander claims, while failing to disclose the status of settlement negotiations and settlement amounts pertaining to the contractual and bystander claims;

    (g) negotiating jointly while failing to disclose agreements among the defendant insurers to make joint settlement offers;

    (h) negotiating anonymously, i.e., failing to disclose the identity of parties or insurers making joint settlement offers and the amount of each insurer's contribution to each joint settlement offer despite the plaintiff's repeat requests for this information; and

22

(i)  insisting in bad faith to be released from liability in the settlement and release agreement pertaining to the plaintiff's wrongful death claims while insurers funding the settlement remained undisclosed.

85. Evanston's above-described actions and omissions constitute unfair and deceptive acts or practices within the meaning of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

86. Evanston's above-described actions and omissions constitute willful and knowing violations of Mass. Gen. Laws ch. 93A, §§ 2, 9 and ch. 176D.

87. To the extent that Markel handled the plaintiff's claims on behalf of Evanston, Evanston is vicariously liable for its agent, Markel's improper claim handling in the course of employment.

WHEREFORE, the plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, demands judgment against the defendant, Evanston Insurance Company, in an amount to be determined by a jury, together with interest and costs, demands that the amount of the judgment be doubled or tripled, demands reasonable attorney's fees, and demands other and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.**

Respectfully submitted,
Plaintiff, Gina M. Ferrini, the Personal Representative of the Estate of Peter F. Monsini, by her Attorneys,

*/s/ Paul Mitchell*
Paul E. Mitchell, BBO #550491
pmitchell@mitchelldesimone.com
John C. DeSimone, BBO #550142
jdesimone@mitchelldesimone.com
Galina I. Razumovsky, BBO #692588
grazumovsky@mitchelldesimone.com
Mitchell & DeSimone
6 Beacon Street, Suite 900
Boston, MA  02108
(617) 737-8300

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served via CM-ECF/email on all counsel of record.

/s/ Paul E. Mitchell

Paul E. Mitchell