**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GINA M. FERRINI, as the Personal<br>Rep. of The Estate of PETER MONSINI,<br><br>Plaintiff,<br><br>v.<br><br>ALLIED WORLD INSURANCE<br>COMPANY (U.S.), INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)  Case No: 1:26-cv-10838<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**UNDERWRITERS' REPLY IN SUPPORT OF MOTION TO DISMISS**

NOW COMES Defendant, Certain Underwriters at Lloyd's, London Subscribing to Policy XS1137721 ("Underwriters"), by and through its attorneys, Burns & Farrey and Traub Lieberman Straus & Shrewsberry, and for its Reply in support of its Motion to Dismiss states as follows:

**I.    Claims Common To All Defendant Insurers – The Complaint Fails To Allege The Defendant Insurers Violated A Duty To Produce Insurance Policies, Disclose Policy Limits, Or Produce Coverage Letters**

Plaintiff[1] fails to support her claims in Subsections (c) and (d)[2] that the Defendant Insurers violated an alleged duty to produce policies, disclose policy limits, and produce coverage letters. She concedes that she made no request to the Defendant Insurers under M.G.L. ch. 175, § 112C. (Doc. 88, Pl. Opp. at p. 13). She does not contend that insurance information was improperly withheld or misrepresented in discovery in the *Monsini* Lawsuit.[3] Rather, Plaintiff relies on the general and unsupported assertion that the Defendant Insurers engaged "in an anonymous charade

---

[1]All abbreviations and naming conventions are adopted from Underwriters' opening Memorandum (Doc. 44).

[2]Plaintiff filed the First Amended Complaint (Doc. No. 80), which corrects the name of one defendant and adds Evanston Insurance Company as a new defendant. The allegations of the First Amended Complaint are otherwise identical and do not change the analysis on the Defendant Insurers' pending Motions to Dismiss.

[3]As noted in the Defendant Insurers' opening brief, even if Plaintiff alleged that defense counsel improperly withheld or misrepresented insurance information in the *Monsini* Lawsuit, such conduct of defense counsel is not imputed to the insurance carrier. (Underwriters' Mem. at p. 12).

aimed to obfuscate the applicable insurance coverages and unreasonably delay settlement." (*Id*. at p. 11). In so doing, Plaintiff mischaracterizes the customary practice for analogous claims involving multiple parties, insurers, and complex insurance programs and overstates the legal obligations owed to third-party claimants in litigation.

Plaintiff does not address *Aquino v. Pacesetter Adjustment*, 416 F. Supp. 2d 181, 197 (D. Mass. 2005), which the Defendant Insurers' cite in their opening brief as standing for the proposition that an insurer's failure to notify a third-party claimant of an excess policy does not violate Chapters 93A or 176D. (Doc. 44, Underwriters' Mem. at p. 9). Her reliance instead on *Panzarella v. Travelers Ins.*, 2002 WL 1290207 (Mass. Super. Apr. 26, 2002), is misplaced. In *Panzarella*, the court held that the insurer committed a "technical violation" of M.G.L. ch. 176D, § 3(9)(a) when it failed to disclose that the defendant had a $5 million umbrella policy until just before trial, despite multiple discovery requests by the plaintiffs for that information. *Id*., at *16. The court ultimately rejected the Chapter 93A claim, because the plaintiffs failed to demonstrate how the insurer's lack of disclosure caused them injury. *Id.* Here, unlike the insurer in *Panzarella*, Plaintiff does not allege that the Defendant Insurers failed to disclose information in response to discovery requests or that they misrepresented coverage in any way. Moreover, like the plaintiffs in *Panzarella*, Plaintiff does not plausibly allege how she sustained damages.[4] *Infra* Section V.

II.   **Claims Common To All Defendant Insurers – The Complaint Fails To Allege The Defendant Insurers Violated Chapter 93A By Making Joint Settlement Offers Without Disclosing The Individual Contributions Of Participating Insurers**

Plaintiff fails to cite any Massachusetts authority requiring insurers to proactively identify themselves or disclose internal allocation decisions during settlement negotiations. Such

---

[4]Plaintiff's citation to *Riley v. Com. Ins. Agency, Inc.*, 1999 Mass. App. Div. 243, 1999 WL 799216 (Dist. Ct. 1999), is likewise unavailing. *Riley* involved allegations that an insurance agent made a misrepresentation by failing to obtain all the coverages promised. *Id*. at. *5.

requirements would fundamentally alter the adversarial nature of settlement negotiations in ways not contemplated by Massachusetts law. *See Peckham v. Continental Ins. Co.*, 895 F. 2d 830, 835 (1st Cir. 1990) ("Courts should not permit bad faith in the insurance milieu to become a game of cat-and-mouse between claimants and insurer, letting claimants induce damages that they then seek to recover, whilst relegating the insured to the sidelines as if only a mildly curious spectator.").

None of the cases cited by Plaintiff support her novel and expansive theory of Chapter 93A liability. For example, she cites *Gore v. Arbella Mut. Ins. Co.*, 77 Mass. App. Ct. 518 (2010), a motor vehicle collision case. In *Gore*, the court found a Chapter 93A violation, because the insurer waited five months to acknowledge receipt of the claimant's demand for the $20,000 policy limits, and then another two months to respond substantively. 77 Mass. App. Ct. 519-20. By the time the original demand was sent, liability was already reasonably clear and it was apparent that the damages would exceed the policy limits. *Id*. In contrast, the *Monsini* Lawsuit involved a complex wrongful death action, related litigation arising from a building collapse, multiple claimants and defendants, overlapping insurance towers, and disputed claims and issues. Nevertheless, the Defendant Insurers responded promptly to Plaintiff's October 2024 demand, participating in a mediation within a month. The Defendant Insurers also responded timely to Plaintiff's November 2024 Chapter 93A demand letters. The settlement in the *Monsini* Lawsuit was achieved in less time than it took the insurer in *Gore* to acknowledge a demand in a straightforward motor vehicle accident case. *Gore* provides no support to Plaintiff's claims here.[5]

---

[5] The other cases cited by Plaintiff are likewise inapposite. *See, e.g.*, *Martorana v. Progressive Direct Ins. Co.*, No. 22-cv-10613-DJC, 2023 WL 2465639, *4 (D. Mass. Mar. 10, 2023) (the plaintiff alleged the insurer knowingly misrepresented information concerning the price of used vehicles); *Marandino v. United States Fire Ins. Co.*, No. 23-cv-40072-DJC, 2025 WL 902352, at *9 (D. Mass. Mar. 25, 2025) (the plaintiff alleged the insurer failed to conduct a reasonable investigation by, among other things, failing to consider expert reports, scientific research, and witness testimony provided by the plaintiff).

**III.    Claims Common To All Defendant Insurers – The Complaint Fails To Allege The Defendant Insurers Violated Chapter 93A By Insisting On A Release**

Plaintiff asserts in Subsection (i) that the Defendant Insurers improperly insisted that they be released as part of the settlement of the *Monsini* Lawsuit. This assertion is not supported by any factual allegations and is undermined by the settlement agreement reached in the *Monsini* Lawsuit, which did not include such a release. Even if true, the Defendant Insurers' conduct does not, by itself, amount to a Chapter 93A violation, and is not connected to any alleged damages. (Underwriters' Mem. at p. 11). Plaintiff's Opposition repeats the same naked assertion as the Complaint, but does nothing to justify or substantiate it. (Opp. at p. 19).

**IV.    Claims Common To All Defendant Insurers – Plaintiff Cannot Pursue Claims Based On Activities Not Raised In Her Chapter 93A Demand Letters**

In Subsections (f), (g), and (h), Plaintiff alleges that the Defendant Insurers improperly made joint and anonymous settlement offers. Plaintiff failed to raise this issue in her Chapter 93A demand letter. Plaintiff's Opposition argues that the demand letters come close enough by alleging the Defendant Insurers failed to disclose information about coverage and the interplay of the various policies (Doc. 44-3 at p. 5), but there is a clear distinction between requests for information about insurance coverage and specific conduct in settlement negotiations.

Contrary to Plaintiff's assertion, she was not relieved of the duty to raise the allegedly unlawful conduct in her Chapter 93A demand letters by *Clegg v. Butler*, 424 Mass. 413 (1997). That case drew a distinction between activities alleged in support of a Chapter 93A violation versus activities alleged in support of a Chapter 176D violation. *Id*. at 422. Here, Subsections (f), (g), and (h) do not pertain to activities prohibited under Chapter 176D. As *Clegg* affirms, alleged Chapter 93A violations, like Subsections (f), (g), and (h), must be disclosed in a demand or are foreclosed in litigation. *Id*.

**V.    Claims Common To All Defendant Insurers – Plaintiff Fails To Connect The Defendant Insurers' Conduct To The Interest Damages She Claims**

Plaintiff contends that she is entitled to the interest lost on money wrongfully withheld by the Defendant Insurers. However, she fails to connect these alleged damages to her claims in Subsections (c) through (i). Those Subsections all concern conduct that occurred after Plaintiff made her initial demand in the *Monsini* Lawsuit in October 2024. As noted, the *Monsini* Lawsuit settled just a few months later in February 2025.

**VI.    Claims Specific to Underwriters – Plaintiff's Reference To A Joint Anonymous Charade Does Not Allege An Unfair Act Or Practice Against Underwriters.**

Plaintiff's Opposition is riddled with conclusory statements directed at Underwriters that are not supported by the facts alleged in her Complaint. When distilled to its essence, Plaintiff fails to dispute that Underwriters was under no obligation as an excess insurer to make a settlement offer until the underlying insurers tendered their policy limits, which is fatal to subsections (a), (b) and (e) of Plaintiff's Complaint. *See Clegg*, 424 Mass. at 421 n. 8.; *Costa*, 2024 LX 287458, at *18-19. Instead, Plaintiff retreats to her "anonymous charade" mantra to excuse the defects in her pleading. But those unsupported statements offer her no help. The October 1, 2024 demand letter was not addressed to Underwriters. Underwriters' response to the November 18, 2024 demand correctly identified it as an excess insurer whose duties are triggered once underlying policies are exhausted. Underwriters owed no duties to disclose more information to the Plaintiff.

Allowing Plaintiff's claim to proceed would convert every case settled with excess insurance into a subsequent lawsuit against insurers under Chapters 176D, regardless of whether the facts support it. The Court should not condone such a fishing expedition. As Plaintiff fails to plead a viable Chapter 176D violation against Underwriters, her Complaint should be dismissed.

5

Respectfully submitted,

*/s/ Thomas B. Farrey, III*
THOMAS B. FARREY, III/BBO#159880
JAMES P. McLARNON, JR./#634568
Burns & Farrey, P.C.
2 South Bolton Street
Marlborough, MA  01752
Tel: 508-756-6288
Farrey@BurnsandFarrey.com
mclarnon@burnsandfarrey.com

Brian C. Bassett (pro hac vice)
TRAUB LIEBERMAN
71 S. Sacker Drive, Suite 2110
Chicago, IL 60606
bbassett@tlsslaw.com

## **CERTIFICATE OF SERVICE**

I, THOMAS B. FARREY, III AND/OR JAMES P. McLARNON, JR., hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


DATED:  May 6, 2026                          */s James P. McLarnon, Jr.*
                                             THOMAS B. FARREY, III
                                             JAMES P. McLARNON, JR.

7